# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### WACO DIVISION

| | |
|---|---|
| **TRANSCEND SHIPPING SYSTEMS, LLC,** *Plaintiff,* <br><br> v. <br><br> **CARRIER GLOBAL CORPORATION,** *Defendant.* | **Case No. 6:21-cv-560** <br><br> **JURY TRIAL DEMANDED** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Transcend Shipping Systems, LLC ("Transcend") hereby files this Original Complaint for Patent Infringement against Carrier Global Corporation ("Defendant" and "Carrier"), and alleges, upon information and belief, as follows:

## THE PARTIES

1. Transcend is a limited liability company organized and existing under the laws of the State of Florida with its principal place of business at 600 S. Dixie Highway, Suite 605, West Palm Beach, Florida 33401.

   Upon information and belief, Carrier Global Corporation is a corporation organized and existing under the laws of the state of Delaware with its principal office at 13995 Pasteur Boulevard, Palm Beach Gardens, Florida 33418.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is proper under 28 U.S.C. §§ 1331, 1332, 1338, and 1367.

3. The Court has personal jurisdiction under the Texas Long Arm Statute and the Due Process Clause of the U.S. Constitution over Carrier because they are present within or have minimum contacts within the State of Texas, including the Western District of Texas.

4. Carrier has sought protection and benefit from the laws of the State of Texas; Carrier regularly conducts business within the State of Texas and within the Western District of Texas; and Plaintiff's cause of action arises directly from Carrier's business contacts and other activities in the State of Texas and in the Western District of Texas. More specifically, Carrier, directly and/or through intermediaries, ship, distribute, use, offer for sale, sell, and/or advertise products and services in the United States, the State of Texas, and the Western District of Texas including but not limited to the Accused Instrumentalities as detailed below. Upon information and belief, Carrier has committed patent infringement in the State of Texas and in the Western District of Texas. Carrier solicits and has solicited customers in the State of Texas and in the Western District of Texas. Carrier has paying customers, who are residents of the State of Texas and the Western District of Texas, who each use and have used the Carrier's products and services in the State of Texas and in the Western District of Texas.

5. As an example, Carrier has an office in San Antonio, Texas is also actively recruiting for positions in San Antonio. (*See* Figures 1-3 below).



Figure 1[1]

# SERVICE ACCOUNT MANAGER

[Apply Now]  [Save]

**Business Unit** Carrier
**Job ID** 30032763
**City** San Antonio
**State** Texas
**Country** United States

**Date Posted:**
2021-02-02-08:00
**Country:**
United States of America
**Location:**
CAT88: San Antonio, TX 555 East Ramsey Road , San Antonio, TX, 78216 USA
Automated Logic Corporation provides innovative building-management solutions that maximize energy efficiency and sustainable building operation while ensuring comfort. Its intuitive products control and monitor building functions such as heating, air conditioning and lighting for commercial office, education, health care, government and data center markets through a global network of independent dealers and North American branch offices. Automated Logic is a part of Carrier Global Corporation, the leading global provider of healthy, safe and sustainable building and cold chain solutions.

Figure 2[2]

---

[1] Source, as visited on May 24, 2021:  https://www.carrier.com/commercial/en/us/service/tx/san-antonio/



Figure 3[3]

6. Upon information and belief, the registered agent for Carrier in Texas is C T Corp System at 1999 Bryan St., Ste. 900, Dallas, Texas 75201-3136.

7. Venue is proper pursuant to 28 U.S.C. §§ 1391 and 1400(b).

## PATENTS-IN-SUIT

8. Transcend Shipping Systems, LLC is the sole and exclusive owner, by assignment, of U.S. Patent Nos. 7,253,731 ("the '731 Patent"); 7,482,920 ("the '920 Patent"); 9,847,029 ("the '029 Patent");

---

[2] Source, as visited on May 24, 2021:  https://jobs.carrier.com/job/san-antonio/service-account-manager/29289/7027626912

[3] Source, as visited on May 24, 2021: https://jobs.carrier.com/job/san-antonio/building-automation-sales-representative/29289/7963210048

10,181,109 ("the '109 Patent"); and 10,796,268 ("the '268 Patent") (hereinafter collectively referred to as "the Transcend Patents").

9.      The Transcend Patents are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

10.     The Transcend Patents each include numerous claims defining distinct inventions.

11.     The priority date of each of the Transcend Patents is at least as early January 23, 2001. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.

12.     Plaintiff alleges infringement on the part of Carrier of each of the Transcend Patents.

13.     The '731 Patent relates generally to an apparatus, including a shipment conveyance device, associated with a shipment, which is a shipping a container, pallet, or tote, a memory device, located at the shipment conveyance device, in which information regarding the shipment is stored, a global positioning device, located at the shipment conveyance device, which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment and/or shipment conveyance device in response to an occurrence of an event or in response to a request for information and generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of the shipment, a shipment temperature, or an impact or force on the shipment conveyance device, and a transmitter, located at the shipment conveyance device, which transmits the message to a communication device. *See* Abstract, '731 Patent.

14.     The '920 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, piece of luggage, or tote, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device located in, on, or at, the shipment conveyance device which determines a

position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '920 Patent.

15.     The '029 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, pallet, or piece of luggage, a memory device located in, on, or at, the shipment conveyance device which stores information regarding the shipment conveyance device, a global positioning device which determines a position or location of the shipment conveyance device, a processing device which processes information regarding the shipment conveyance device in response to an occurrence of an event or a request for information and which generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or transportation involving the shipment conveyance device, a temperature, or an impact or force on the shipment conveyance device, and a transmitter located in, on, or at, the shipment conveyance device which transmits the message to a communication device. *See* Abstract, '029 Patent.

16.     The '109 Patent relates generally to an apparatus, including a shipment conveyance device, wherein the shipment conveyance device is a shipping container, pallet, or piece of luggage; a receiver; a global positioning device which is located in, on, or at, the shipment conveyance device and which determines a position or location of the shipment conveyance device; a processor which generates a

message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device; and a transmitter which is located in, on, or at, the shipment conveyance device and which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '109 Patent.

17.     The '268 Patent relates generally to an apparatus, including a shipment conveyance device which is a shipping container, a pallet, or a piece of luggage; a global positioning device, located in, on, or at, the shipment conveyance device, which determines a position or location of the shipment conveyance device; a processor which generates a message in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device which request is automatically received by a receiver, and which message contains information regarding a shipment of the shipment conveyance device; and a transmitter, located in, on, or at, the shipment conveyance device, which transmits the message to a communication device associated with an owner of the shipment conveyance device or an individual authorized to receive the message. *See* Abstract, '268 Patent.

18.     The claims of the Transcend Patents are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Transcend Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, was not conventional or routine at the time of the invention.

19.    The '731 Patent was examined by Primary United States Patent Examiner Van T. Trieu. During the examination of the '731 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.13, 340/568.1 and 340/572.1.

20.    After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 3,669,288, 06/1972, Young; (ii) US 5,317,323, 05/1994, Kennedy et al.; (iii) "Envirokare announces letter of intent with Electroship . . ." 2 page Envirokare press release dated Jul. 25, 2000"; (iv) US 5,825,283, 10/1998, Camhi; (v) US 6,044,990, 04/2000, Palmeri; (vi) US 6,464,142, 10/2002, Denenberg et al.; (vii) US 2002/0017996, 02/2002, Niemiec; (viii) FR 2816434, 05/2002, Touzet; (ix) US 5,877,707, 03/1999, Kowalick; (x) US 5,917,405, 06/1999, Joao; (xi) US 5,917,434, 06/1999, Murphy; (xii) US 6,046,678, 04/2000, Wilk; (xiii) US 6,148,291, 11/2000, Radican; (xiv) US 6,281,797, 08/2001, Forster et al.; (xv) US 6,292,828, 09/2001, Williams; (xvi) US 6,332,098, 12/2001, Ross et al.; (xviii) US 6,474,927, 11/2002, McAdams et al.; (xix) US 6,542,076, 04/2003, Joao; (xx) US 6,542,077, 04/2003, Joao; (xxi) US 6,549,130, 04/2003, Joao; (xxii) US 6,587,046, 07/2003, Joao; (xxiii) US 6,610,954, 08/2003, Takizawa; (xxiv) US 6,844,473, 01/2005, Quinlin et al.; (xxv) US 2002/0016655, 02/2002, Joao; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvi) US 2002/0049622, 04/2002, Lettich et al.; (xxvii) US 2002/0116318, 08/2002, Thomas et al.; (xxviii) US 2002/0121969, 09/2002, Joao; (xxix) US 2002/0198774, 12/2002, Weirich; (xxx) US 2003/0009361, 01/2003, Hancock et al.; (xxxi) US 2003/0016130, 01/2003, Joao; (xxxii) US 2003/0067541, 04/2003, Joao; (xxxiii) US 2003/0071899, 04/2003, Joao; (xxxiv) US 2003/0084125, 05/2003, Nagda et al.; (xxxv) US 2003/0193404, 10/2003, Joao; (xxxvi) US 2003/0206102, 11/2003, Joao; (xxxvii) US 2004/0160319, 08/2004, Joao; (xxxviii) US 2004/0230601, 11/2004, Joao; (xxxix) US 2005/0171835, 08/2005, Mook et al.; (xxxx) US

2005/0248444, 11/2005, Joao; (xxxxi) "Technology Executive . . . joins Envirokare as president and Director", 2 page Envirokare press release dated Sep. 5, 2000; and (xxxxii) "Envirokare Tech Inc. announces additions to advisory board", 3 page Envirokare press release dated Sep. 7, 2000.

21.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '731 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

22.     The '731 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

23.     The '920 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '920 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: 340/539.11, 340/568.1 and 340/572.1.

24.     After conducting searches for prior art during the examination of the '731 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,825,283, 10/1998, Camhi; (ii)  US 6,046,678, 04/2000, Wilk; (iii) US 6,148,291, 11/2000, Radican; (iv) US 6,323,782, 11/2001, Stephens et al.; (v) US 6,429,810, 08/2002, De Roche; (vi) US 6,610,954, 08/2003, Takizawa; (vii) US 6,745,027, 06/2004, Twitchell, Jr.; and (viii) US 6,882,269, 04/2005, Moreno.

25.	After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '920 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

26.	The '920 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

27.	The '029 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '029 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G08G 1/20, G01S 13/84, G06Q 10/08, G06Q 10/087, G08B 1/08, G08G 1/202, G08G 1/205, H04W 4/02, and H04W 4/021.

28.	After conducting searches for prior art during the examination of the '029 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,640,002, 06/1997, Ruppert et al.; (ii) US 5,825,283, 10/1998, Camhi; (iii)  US 5,959,568, 09/1999, Woolley; (iv) US 6,046,678, 04/2000, Wilk; (v) US 6,148,291, 11/2000, Radican; (vi) US 6,281,797, 08/2001, Forster et al.; (vii) US 6,304,856, 10/2001, Soga; (viii) US 6,356,802, 03/2002, Takehara; (ix) US 6,411,891, 06/2002, Jones; (x) US 6,429,810, 08/2002, De Roche; (xi) US 6,610,954, 08/2003, Takizawa; (xii) US 6,745,027, 06/2004, Twitchell, Jr.; (xiii) US 6,748,318, 06/2004, Jones; (xix) US 6,859,722, 02/2005, Jones; (xx) US 6,882,269,

04/2005, Moreno; (xxi) US 6,904,359, 06/2005, Jones; (xxii) US 7,035,856, 04/2006, Morimoto; (xxiii) US 7,085,775, 08/2006, Short et al.; (xxiv) US 7,212,829, 05/2007, Lau et al.; (xxv) US 2002/0046173, 04/2002, Kelly; (xxvi) US 2002/0061758, 05/2002, Zarlengo et al.; (xxvii) US 2002/0120475, 08/2002, Morimoto; and (xxviii) US 2002/0132855, 07/2003, Swan.

29.     After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '029 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

30.     The '029 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

31.     The '109 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '109 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08, G06Q 10/083, G06Q 10/087, H04W 4/02, and H04W 4/021.

32.     After conducting searches for prior art during the examination of the '109 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 7,035,856, 04/2006, Morimoto;

(iii) US 7,212,829, 05/2007, Lau et al.; (iv) US 7,253,731, 08/2007, Joao; (v) US 9,847,029, 12/2017, Joao; and (vi) US 2002/0120475, 08/2002, Morimoto.

33.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiner allowed all of the claims of the '109 Patent to issue.  In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims.  *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

34.    The '109 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

35.    The '268 Patent was examined by Primary United States Patent Examiner Van T. Trieu.  During the examination of the '268 Patent, the United States Patent Examiner searched for prior art in the following US Classifications: G06Q 10/08 and G06Q 10/083.

36.    After conducting searches for prior art during the examination of the '268 Patent, the United States Patent Examiner identified and cited the following as the most relevant prior art references found during the searches: (i) US 5,959,568, 09/1999, Woolley; (ii) US 6,148,291, 1/2000, Radican; (iii) US 6,492,904, 12/2002, Richards; (iv) US 7,035,856, 04/2006, Morimoto; (v) US 10,181,109, 01/2019, Joao; and (vi) US 2002/0111819, 08/2002, Li.

37.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent

Examiner allowed all of the claims of the '268 Patent to issue. In so doing, it is presumed that Examiner Trieu used his or her knowledge of the art when examining the claims. *K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014). It is further presumed that Examiner Trieu has experience in the field of the invention, and that the Examiner properly acted in accordance with a person of ordinary skill. *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

38.  The '268 Patent is a pioneering patent, and has been cited as relevant prior art in over 130 subsequent United States Patent Applications, including Applications assigned to technology and business leaders such as Google, Inc., AT&T, FedEx, Qualcomm, Inc., Fujitsu, Ltd., United Parcel Services of America, American Airlines and NEC Corp.

39.  The claims of the Transcend Patents were all properly issued, and are valid and enforceable for the respective terms of their statutory life through expiration, and are enforceable for purposes of seeking damages for past infringement even post-expiration. *See, e.g., Genetics Institute, LLC v. Novartis Vaccines and Diagnostics, Inc.,* 655 F.3d 1291, 1299 (Fed. Cir. 2011) ("[A]n expired patent is not viewed as having 'never existed.' Much to the contrary, a patent does have value beyond its expiration date. For example, an expired patent may form the basis of an action for past damages subject to the six-year limitation under 35 U.S.C. § 286") (internal citations omitted).

40.  The expiration dates of the Transcend Patents are at least the following: the '731 Patent expired on August 7, 2019 due to nonpayment of maintenance fees; the '920 Patent expires no earlier than April 27, 2022; the '029 Patent expires no earlier than November 1, 2023; the '109 Patent expires no earlier than January 22, 2022; and the '268 Patent expires no earlier than January 22, 2022.

## ACCUSED INSTRUMENTALITIES

41.  Upon information and belief, Carrier sells, advertises, offers for sale, uses, or otherwise provides shipment conveyance devices ("Carrier Pods") which are equipped with Sensitech devices that

utilize "TripLINK" telematics ("Accused Instrumentalities") for shipping and/or delivering goods, products, items, and/or other objects that infringe the Transcend Patents.

## COUNT I

### (Infringement of U.S. Patent No. 10,181,109)

42.  Plaintiff incorporates the above paragraphs by reference.

43.  Carrier has been on actual notice of the '109 Patent at least as early as the date it received service of this Original Complaint.

44.  On information and belief, Carrier owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

45.  Upon information and belief, Carrier has directly infringed and continues to directly infringe at least claims 1, 8, 10, and 14 of the '109 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

46.  Carrier, with knowledge of the '109 Patent, also infringes at least claims 1, 8, 10, and 14 of the '109 Patent by inducing others to infringe the '109 Patent. In particular, Carrier intends to induce its customers to infringe the '109 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

47.  Carrier also induces others, including its customers, to infringe at least claims 1, 8, 10, and 14 of the '109 Patent by providing technical support for the use of the Accused Instrumentalities.

48.  Upon information and belief, Carrier makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage. For example, Carrier provides Carrier Pods ("shipment conveyance device") which are equipped with Sensitech devices that utilize TripLINK telematics for shipping

and/or delivering goods, products, items, and/or other objects.  See Figures 4 and 5 below, which are screenshots of webpages associated with Carrier.

## New Carrier Pods Monitored by Sensitech Provide Mobile Cold Storage Solutions for COVID-19 Vaccine Distribution

PALM BEACH GARDENS, FLA. - Oct. 27, 2020

*Precise cooling and monitoring can help protect and ensure the life of vaccines*

New Carrier Pods™ monitored by Sensitech® combine leading refrigeration technology and cargo monitoring capabilities to help address the unique challenges of COVID-19 vaccine distribution. Customers can expand their cold storage capacity along with added cargo visibility to help ensure the life of vaccines. Carrier and Sensitech are part of Carrier Global Corporation (NYSE: CARR), a leading global provider of healthy, safe and sustainable building and cold chain solutions.

Bringing together Carrier's demonstrated container refrigeration offerings with Sensitech's advanced monitoring solutions provides customers today with options for deep-freeze cooling, real-time telematics, data analytics and product visibility. Carrier's recently announced Lynx™ digital platform is expected to provide added connectivity by the end of the year. Additionally, the mobility of Carrier Pods monitored by Sensitech provides pharmaceutical companies, distribution centers, retailers and vaccine administrators with flexibility to move vaccine storage to other locations.

Figure 4[4]



## Carrier Pods™
## Monitored by Sensitech®

Bringing together Carrier's demonstrated container refrigeration offerings with Sensitech's advanced monitoring solutions provides customers today with options for deep-freeze cooling, real-time telematics, data analytics and product visibility. Carrier's recently announced Lynx™ digital platform is expected to provide added connectivity.

Additional benefits from the combined capabilities include:

- Product quality and integrity
- Greater visibility
- Security and compliance

Figure 5[5]

---

[4] Source, as visited on May 25, 2021:  https://www.carrier.com/carrier/en/worldwide/news/news-article/new_carrier_pods_monitored_by_sensitech_provide_mobile_cold_storage_solutions_for_covid_19_vaccine_distribution.html

[5] Source, as visited on May 25, 2021:  https://www.carrier.com/container-refrigeration/en/worldwide/products/Container-Units/mobile-storage/#

49.     Upon information and belief, Carrier provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device. For example, Carrier's shipping containers are fitted with Sensitech devices which comprise a global positioning device to determine a position/location of the shipping container. See Figures 4 and 5 above. See also Figures 6-9 below, which are screenshots of webpages associated with Carrier.



Figure 6[6]

[6] Source, as visited on June 1, 2021: https://www.corporate.carrier.com/Images/Inforgraphic-Precise-Cooling-and-Monitoring-for-COVID-19-Vaccines_tcm558-102456.pdf



**TripLINK™**

Carrier's TripLINK™ data management platform is designed to provide customers with enhanced visibility of the health and status of their entire refrigeration unit fleet through an interactive digital dashboard accessible from anywhere. Telematics integration and a cloud-based architecture ensure information is always up to date, so users can make informed decisions on fleet operations and drive lower operating costs.

- Refrigeration unit health analytics
- 24/7 telematics
- Intuitive displays
- Container location mapping
- Critical alarm status
- Customizable data analysis and reports

Figure 7[7]

Other TripLINK platform enhancements include:

- **Carrier-exclusive TripWise™ expiration prediction** – For container refrigeration units equipped with Carrier Transicold's TripWise diagnostic software, the TripLINK platform can now calculate the expiration date of TripWise status. This information will help fleet managers prioritize asset utilization based on time remaining before TripWise expiration, thus minimizing time and expense related to conducting a new off-line pre-trip inspection (PTI).
- **Cumulative unit run-hours** – By providing cumulative refrigeration unit run-hours, the TripLINK platform helps fleet managers to optimize utilization and service cycles of their Carrier Transicold-refrigerated containers to better control maintenance and repair costs.
- **New over-the-air commands** – In addition to setting temperature levels, users can now use the TripLINK platform to set oxygen and carbon dioxide($CO_2$) levels for their EverFRESH® and XtendFRESH™ controlled-atmosphere systems, as well as adjust setpoints and settings for their QUEST and economy power-saving modes.
- **A new "bread-crumb trail"** – The fleet's TripLINK website now illustrates the route of a refrigeration unit's voyage based on GPS and time data uploaded when the TripLINK-equipped refrigeration unit is within range of cell service.
- **User experience enhancements** – Other enhancements include refinements to the online user interface for ease-of-use and greater customization. Improvements encompass the Login experience and the Dashboard, Reefer Status, Asset Details, Notifications and Asset Operations pages.

Figure 8[8]



Figure 9[9]

---

[8] Source, as visited on June 1, 2021: https://www.carrier.com/carrier/en/worldwide/news/news-article/carrier_transicolds_triplink_platform_adds_container_refrigeration_unit_health_analytics_to_improve_asset_management.html?location=us

50.     Upon information and belief, Carrier provides a processor, wherein the processor generates a message in response to an occurrence of the event or in response to a request for information regarding the shipment conveyance device, wherein the request for information is automatically received by the receiver, wherein the message contains information regarding a position or location of the shipment conveyance device. For example, Carrier's shipping containers are equipped with Sensitech devices that utilize TripLINK telematics which, on information and belief, include processing devices which measure information related to the shipping container, including one or more of, but not limited to, the location of the shipping container and the temperature in the shipping container. Therefore, Carrier provides a processor which processes information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of Carrier. On information and belief, these alerts are viewed via a desktop application and/or a mobile application (the TripLINK telematics data platform) provided by Carrier. Therefore, on information and belief, Carrier provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, measure information using sensors including one or more of, but not limited to, a GPS sensor and a temperature sensor, and transmit information in the form of alerts to Carrier's customers after a request for information is received by Carrier automatically. Therefore, on information and belief, Carrier provides a receiver which receives a request for

---

[9] Source, as visited on June 1, 2021: https://www.shareddocs.com/hvac/docs/2000/Public/09/Carrier-Pods-Monitored-By-Sensitech.pdf

information automatically. See Figures 4-9 above. See also Figures 9 and 10 below, which are screenshots of webpages associated with Carrier.



Figure 10[10]



Figure 11[11]

51.     Upon information and belief, Carrier provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.  For example, Carrier's shipping containers ("shipment conveyance device"), fitted with Sensitech devices that utilize TripLINK telematics, send information ("message") including one or more of, but not limited to, location and temperature, to Carrier's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, Carrier

[11] Source, as visited on June 1, 2021:
https://www.shareddocs.com/hvac/docs/2000/Public/03/TripLINK-2020.pdf

provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message. See Figures 4-11 above.

52. Upon information and belief, Carrier provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device. For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, Carrier's shipping containers fitted with Sensitech devices that utilize TripLINK telematics comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device. See Figures 4-11 above. See also Figures 12 below, which is a screenshot of a webpage associated with Carrier.



Figure 12[12]

[12] Source, as visited on June 1, 2021: https://www.corporate.carrier.com/Images/Inforgraphic-Precise-Cooling-and-Monitoring-for-COVID-19-Vaccines_tcm558-102456.pdf

53. Upon information and belief, Carrier also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device. For example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to Carrier's customers. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, detects changes in the temperature in the shipping container and transmit an alert ("message") to Carrier's customers if the change exceeds a predetermined threshold. Therefore, Carrier provides a message which contains information regarding temperature of shipment. See Figures 10-12 above.

54. Upon information and belief, Carrier further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics send GPS location information and associated alerts. Therefore, on information and belief, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect events related to deviation from a pre-determined transportation route (e.g., "geofencing"). See Figures 6-11 above.

55. Upon information and belief, Carrier further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a heated container, or an insulated container. For example, some of Carrier's shipping containers are refrigerated containers. See Figures 4-6 and 9 above.

56.     To the extent Carrier continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '109 Patent, such infringement is necessarily willful and deliberate.

57.     On information and belief, Carrier has a policy or practice of not reviewing the patents of others. Further on information and belief, Carrier instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Carrier has been willfully blind to the patent rights of Plaintiff.

58.     Each of Carrier's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT II

### (Infringement of U.S. Patent No. 9,847,029)

59.     Plaintiff incorporates the above paragraphs by reference.

60.     Carrier has been on actual notice of the '029 Patent at least as early as the date it received service of this Original Complaint.

61.     On information and belief, Carrier owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

62.     Upon information and belief, Carrier has directly infringed and continues to directly infringe at least Claims 2, 12, 15, and 19 of the '029 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

63.     Carrier, with knowledge of the '029 Patent, also infringes at least Claims 2, 12, 15, and 19 of the '029 Patent by inducing others to infringe the '029 Patent.  In particular, Carrier intends to induce its customers to infringe the '029 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

64.    Carrier also induces others, including its customers, to infringe at least Claims 2, 12, 15, and 19 of the '029 Patent by providing technical support for the use of the Accused Instrumentalities.

65.    As described above (*see* ¶ 48), and upon information and belief, Carrier makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage.  For example, Carrier provides Carrier Pods ("shipment conveyance device") which are equipped with Sensitech devices that utilize TripLINK telematics for shipping and/or delivering goods, products, items, and/or other objects.

66.    As described above (*see* ¶ 49), and upon information and belief, Carrier provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, Carrier's shipping containers are fitted with Sensitech devices which comprise a global positioning device to determine a position/location of the shipping container.

67.    As described above (*see* ¶ 50), and upon information and belief, Carrier also provides a processor, wherein the processor processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, and further wherein the processor generates a message in response to the occurrence of the event or in response to the request for information regarding the shipment conveyance device.  For example, Carrier's shipping containers are equipped with Sensitech devices that utilize TripLINK telematics which, on information and belief, include processing devices which measure information related to the shipping container, including one or more of, but not limited to, the location of the shipping container and the temperature in the shipping container. Therefore, Carrier provides a processor which processes information regarding the shipment conveyance

device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of Carrier. On information and belief, these alerts are viewed via a desktop application and/or a mobile application (the TripLINK telematics data platform) provided by Carrier. Therefore, on information and belief, Carrier provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, measure information using sensors including one or more of, but not limited to, a GPS sensor and a temperature sensor, and transmit information in the form of alerts to Carrier's customers after a request for information is received by Carrier automatically. Therefore, on information and belief, Carrier provides a receiver which receives a request for information automatically.

68.     As described above (*see* ¶ 51), and upon information and belief, Carrier provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the shipment conveyance device, a receiver of the shipment conveyance device, or an individual authorized to receive the message.   For example, Carrier's shipping containers ("shipment conveyance device"), fitted with Sensitech devices that utilize TripLINK telematics, send information ("message") including one or more of, but not limited to, location and temperature, to Carrier's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, Carrier provides a transmitter for

transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

69. As described above (*see* ¶ 52), and upon information and belief, Defendant provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device. For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, Carrier's shipping containers fitted with Sensitech devices that utilize TripLINK telematics comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

70. As described above (*see* ¶ 53), and upon information and belief, Carrier also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device. For example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to Carrier's customers. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, detects changes in the temperature in the shipping container and transmit an alert ("message") to Carrier's customers if the change exceeds a predetermined threshold.

71. As described above (*see* ¶ 54), and upon information and belief, Carrier further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or

transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics send GPS location information and associated alerts. Therefore, on information and belief, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect events related to deviation from a pre-determined transportation route (e.g., "geofencing").

72.    As described above (*see* ¶ 55), and upon information and belief, Carrier further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a heated container, or an insulated container. For example, some of Carrier's shipping containers are refrigerated containers.

73.    To the extent Carrier continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '029 Patent, such infringement is necessarily willful and deliberate.

74.    On information and belief, Carrier has a policy or practice of not reviewing the patents of others. Further on information and belief, Carrier instructs its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Carrier has been willfully blind to the patent rights of Plaintiff.

75.    Each of Carrier's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT III

### (Infringement of U.S. Patent No. 7,482,920)

76.    Plaintiff incorporates the above paragraphs by reference.

77.    Carrier has been on actual notice of the '920 Patent at least as early as the date it received service of this Original Complaint.

78.     On information and belief, Carrier owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

79.     Upon information and belief, Carrier has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, and 16 of the '920 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

80.     Carrier, with knowledge of the '920 Patent, also infringes at least Claims 1, 5, 9, 11, and 16 of the '920 Patent by inducing others to infringe the '920 Patent. In particular, Carrier intends to induce its customers to infringe the '920 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

81.     Carrier also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11, and 16 of the '920 Patent by providing technical support for the use of the Accused Instrumentalities.

82.     As described above (*see* ¶ 48), and upon information and belief, Carrier makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a smart container, a pallet, or a piece of luggage. For example, Carrier provides Carrier Pods ("shipment conveyance device") which are equipped with Sensitech devices that utilize TripLINK telematics for shipping and/or delivering goods, products, items, and/or other objects.

83.     Upon information and belief, Carrier provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein the memory device stores information regarding a description of a good, product, or item, being shipped or transported via or which is contained in or on the shipment conveyance device, and origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, or payment instruction information, regarding the shipment conveyance device. For

example, Carrier's shipping containers are fitted with the Sensitech devices that utilize TripLINK telematics which comprise sensors including one or more of, but not limited to, a GPS sensor and a temperature sensor. As a further example, and on information and belief, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics store at least an identification of Carrier (since it communicates the position of the container and measurements from the sensors), and therefore Carrier provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics store at least an identification of Carrier's container (since it communicates the position of the container and measurements from the sensors), and therefore Carrier provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics store at least an identification of Carrier's customer (since it communicates the position of the container and measurements from the sensors to Carrier (who may have multiple customers availing Carrier's services at any given time) and Carrier must correlate the information to the particular customer in order to provide updates to the customer), and therefore Carrier provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device. See Figures 4-12 above.

84.    As described above (*see* ¶ 49), and upon information and belief, Carrier provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or

location of the shipment conveyance device. For example, Carrier's shipping containers are fitted with Sensitech devices which comprise a global positioning device to determine a position/location of the shipping container.

85. As described above (*see* ¶ 50), and upon information and belief, Carrier also provides a processing device, wherein the processing device processes information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment conveyance device and information regarding the occurrence of an event, a status of a shipment or a transportation of or involving the shipment conveyance device, a shipment or transportation temperature, or an impact or force on the shipment conveyance device. For example, Carrier's shipping containers are equipped with Sensitech devices that utilize TripLINK telematics which, on information and belief, include processing devices which measure information related to the shipping container, including one or more of, but not limited to, the location of the shipping container and the temperature in the shipping container. Therefore, Carrier provides a processor which processes information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of Carrier. On information and belief, these alerts are viewed via a desktop application and/or a mobile application (the TripLINK telematics data platform) provided by Carrier. Therefore, on information and belief, Carrier provides a processor which generates a message in response to occurrence of an

event and the message contains information regarding the position and location of the shipment conveyance device.

86.     As described above (*see* ¶ 51), and upon information and belief, Carrier provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, wherein the transmitter transmits the message to a communication device associated with an individual or entity, a sender of the shipment conveyance device, a receiver of the shipment conveyance device, a carrier of the shipment conveyance device, or an individual or entity authorized to receive information regarding the shipment conveyance device or information regarding a shipment or a transportation of or involving the shipment conveyance device.   For example, Carrier's shipping containers ("shipment conveyance device"), fitted with Sensitech devices that utilize TripLINK telematics, send information ("message") including one or more of, but not limited to, location and temperature, to Carrier's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, Carrier provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

87.     As described above (*see* ¶ 52), and upon information and belief, Carrier provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or the transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device.   For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, Carrier's shipping containers fitted with Sensitech devices that utilize TripLINK telematics comprise sensors

that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

88.     As described above (*see* ¶ 53), and upon information and belief, Carrier also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device.  For example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to Carrier's customers. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, detects changes in the temperature in the shipping container and transmit an alert ("message") to Carrier's customers if the change exceeds a predetermined threshold. Therefore, Carrier provides a message which contains information regarding temperature of shipment.

89.     As described above (*see* ¶ 54), and upon information and belief, Carrier further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with the shipment or a transportation of or involving the shipment conveyance device.  For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics send GPS location information and associated alerts. Therefore, on information and belief, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect events related to deviation from a pre-determined transportation route (e.g., "geofencing").

90.     Upon information and belief, Carrier further provides an apparatus wherein the event is a detection of a shipment or transportation temperature which deviates from a shipment or transportation temperature requirement.  For example, Carrier's shipping containers equipped with Sensitech

devices transmit alerts to Carrier's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature. See Figures 9-12 above.

91. As described above (*see* ¶ 55), and upon information and belief, Carrier further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a heated container, or an insulated container.  For example, some of Carrier's shipping containers are refrigerated containers.

92. To the extent Carrier continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '920 Patent, such infringement is necessarily willful and deliberate.

93. On information and belief, Carrier has a policy or practice of not reviewing the patents of others. Further on information and belief, Carrier instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Carrier has been willfully blind to the patent rights of Plaintiff.

94. Each of Carrier's aforesaid activities has been without authority and/or license from Plaintiff.

<u>COUNT IV</u>

<u>(Infringement of U.S. Patent No. 10,796,268)</u>

95. Plaintiff incorporates the above paragraphs by reference.

96. Carrier has been on actual notice of the '268 Patent at least as early as the date it received service of this Original Complaint.

97. On information and belief, Carrier owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

98.     Upon information and belief, Carrier has directly infringed and continue to directly infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

99.     Carrier, with knowledge of the '268 Patent, also infringes at least Claims 1, 8 , 10 and 12 of the '268 Patent by inducing others to infringe the '268 Patent.  In particular, Carrier intends to induce its customers to infringe the '268 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

100.    Carrier also induces others, including its customers, to infringe at least Claims 1, 8 , 10 and 12 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

101.    As described above (*see* ¶ 48), and upon information and belief, Carrier makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is a shipping container, a pallet, or a piece of luggage.  For example, Carrier provides Carrier Pods ("shipment conveyance device") which are equipped with Sensitech devices that utilize TripLINK telematics for shipping and/or delivering goods, products, items, and/or other objects.

102.    As described above (*see* ¶ 49), and upon information and belief, Carrier provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device.  For example, Carrier's shipping containers are fitted with Sensitech devices which comprise a global positioning device to determine a position/location of the shipping container.

103.    As described above (*see* ¶ 50), and upon information and belief, Carrier also provides a processor, wherein the processor generates a message in response to an occurrence of an event, or in response to a request for information regarding the shipment conveyance device which is automatically

received by a receiver, wherein the message contains information regarding a shipment of the shipment conveyance device. For example, Carrier's shipping containers are equipped with Sensitech devices that utilize TripLINK telematics which, on information and belief, include processing devices which measure information related to the shipping container, including one or more of, but not limited to, the location of the shipping container and the temperature in the shipping container. Therefore, Carrier provides a processor which processes information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of Carrier. On information and belief, these alerts are viewed via a desktop application and/or a mobile application (the TripLINK telematics data platform) provided by Carrier. Therefore, on information and belief, Carrier provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, measure information using sensors including one or more of, but not limited to, a GPS sensor and a temperature sensor, and transmit information in the form of alerts to Carrier's customers after a request for information is received by Carrier automatically. Therefore, on information and belief, Carrier provides a receiver which receives a request for information automatically.

104. As described above (*see* ¶ 51), and upon information and belief, Carrier provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with an owner of the

shipment conveyance device or an individual authorized to receive the message. For example, Carrier's shipping containers ("shipment conveyance device"), fitted with Sensitech devices that utilize TripLINK telematics, send information ("message") including one or more of, but not limited to, location and temperature, to Carrier's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, Carrier provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

105. As described above (*see* ¶ 52), and upon information and belief, Carrier provides a sensor, wherein the sensor monitors or measures a temperature during a shipment or a transportation of the shipment conveyance device, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, or a force exerted on the shipment conveyance device. For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, Carrier's shipping containers fitted with Sensitech devices that utilize TripLINK telematics comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

106. As described above (*see* ¶ 53), and upon information and belief, Carrier also provides a message which contains information regarding a temperature during the shipment or the transportation, a change in a shipment or transportation temperature, or an impact or force exerted on the shipment conveyance device. For example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to Carrier's customers. As a further example, Carrier's

shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, detects changes in the temperature in the shipping container and transmit an alert ("message") to Carrier's customers if the change exceeds a predetermined threshold.

107. As described above (*see* ¶ 54), and upon information and belief, Carrier further provides an apparatus wherein the event is a detection of a deviation from a pre-determined shipment or transportation route associated with a shipment or a transportation of or involving the shipment conveyance device. For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics send GPS location information and associated alerts. Therefore, on information and belief, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect events related to deviation from a pre-determined transportation route (e.g., "geofencing").

108. As described above (*see* ¶ 55), and upon information and belief, Carrier further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated container, a heated container, or an insulated container. For example, some of Carrier's shipping containers are refrigerated containers.

109. To the extent Carrier continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '268 Patent, such infringement is necessarily willful and deliberate.

110. On information and belief, Carrier has a policy or practice of not reviewing the patents of others. Further on information and belief, Carrier instructs its employees to not review the patents of others for clearance or to assess infringement thereof. As such, Carrier has been willfully blind to the patent rights of Plaintiff.

111. Each of Carrier's aforesaid activities has been without authority and/or license from Plaintiff.

## COUNT V

## (Infringement of U.S. Patent No. 7,253,731)

112.    Plaintiff incorporates the above paragraphs by reference.

113.    Carrier has been on actual notice of the '731 Patent at least as early as the date it received service of this Original Complaint.

114.    On information and belief, Carrier owns and controls the operation of the Accused Instrumentalities and generates substantial financial revenues therefrom.

115.    Upon information and belief, Carrier has directly infringed and continue to directly infringe at least Claims 1, 5, 9, 11, and 16 of the '731 Patent by making, using, importing, selling, and/or, offering for sale the Accused Instrumentalities.

116.    Carrier, with knowledge of the '731 Patent, also infringes at least Claims 1, 5, 9, 11, and 16 of the '731 Patent by inducing others to infringe the '731 Patent.  In particular, Carrier intends to induce its customers to infringe the '731 Patent by encouraging its customers to use the Accused Instrumentalities in a manner that results in infringement.

117.    Carrier also induces others, including its customers, to infringe at least Claims 1, 5, 9, 11, and 16 of the '268 Patent by providing technical support for the use of the Accused Instrumentalities.

118.    As described above (*see* ¶ 48), and upon information and belief, Carrier makes, uses, sells and offers for sale an apparatus, comprising, a shipment conveyance device, wherein the shipment conveyance device is associated with a shipment, and further wherein the shipment conveyance device is at least one of a shipping container, a pallet, and a tote.  For example, Carrier provides Carrier Pods ("shipment conveyance device") which are equipped with Sensitech devices that utilize TripLINK telematics for shipping and/or delivering goods, products, items, and/or other objects.

119.   As described above (*see* ¶ 83), and upon information and belief, Carrier provides a memory device, wherein the memory device is located in, on, or at, the shipment conveyance device, wherein information regarding the shipment is stored in the memory device, and further wherein the information regarding the shipment includes a description of a good, product, or item, being shipped or transported via the shipment conveyance device, and at least one of origination information, sender information, shipper information, destination information, receiver information, handling instruction information, delivery instruction information, invoice information, packing slip information, delivery time information, and payment instruction information, regarding the shipment. For example, Carrier's shipping containers are fitted with the Sensitech devices that utilize TripLINK telematics which comprise sensors including one or more of, but not limited to, a GPS sensor and a temperature sensor. As a further example, and on information and belief, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics store at least an identification of Carrier (since it communicates the position of the container and measurements from the sensors), and therefore Carrier provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics store at least an identification of Carrier's container (since it communicates the position of the container and measurements from the sensors), and therefore Carrier provides a memory device which stores at least one or more of origination information, sender information, and shipper information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics store at least an identification of Carrier's customer (since it communicates the position of the container and measurements from the sensors to Carrier (who may have multiple customers

availing Carrier's services at any given time) and Carrier must correlate the information to the particular customer in order to provide updates to the customer), and therefore Carrier provides a memory device which stores at least one or more of origination information, sender information, shipper information, destination information and receiver information regarding the shipment conveyance device.

120. As described above (*see* ¶ 49), and upon information and belief, Carrier provides a global positioning device, wherein the global positioning device is located in, on, or at, the shipment conveyance device, and further wherein the global positioning device determines a position or location of the shipment conveyance device. For example, Carrier's shipping containers are fitted with Sensitech devices which comprise a global positioning device to determine a position/location of the shipping container.

121. As described above (*see* ¶¶ 50, 52 and 53), and upon information and belief, Carrier also provides a processing device, wherein the processing device processes at least one of information regarding the shipment and information regarding the shipment conveyance device in response to an occurrence of an event or in response to a request for information regarding the shipment or the shipment conveyance device, wherein the processing device generates a message containing information regarding the position or location of the shipment or the shipment conveyance device and information regarding at least one of the occurrence of an event, a status of the shipment, a shipment temperature, and an impact or force on the shipment conveyance device. For example, Carrier's shipping containers are equipped with Sensitech devices that utilize TripLINK telematics which, on information and belief, include processing devices which measure information related to the shipping container, including one or more of, but not limited to, the location of the shipping container and the temperature in the shipping container. Therefore, Carrier provides a processor

which processes information regarding the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect an event including one or more of, but not limited to, deviation in temperature and deviation in planned route and, in response to the detected event, send alerts ("message") containing information about the event to the customers of Carrier. On information and belief, these alerts are viewed via a desktop application and/or a mobile application (the TripLINK telematics data platform) provided by Carrier. Therefore, on information and belief, Carrier provides a processor which generates a message in response to occurrence of an event and the message contains information regarding the position and location of the shipment conveyance device. As a further example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, Carrier's shipping containers fitted with Sensitech devices that utilize TripLINK telematics comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to Carrier's customers. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, detects changes in the temperature in the shipping container and transmit an alert ("message") to Carrier's customers if the change exceeds a predetermined threshold. Therefore, Carrier provides a message which contains information regarding temperature of shipment.

122.    As described above (*see* ¶ 51), and upon information and belief, Carrier provides a transmitter, wherein the transmitter is located in, on, or at, the shipment conveyance device, and further wherein the transmitter transmits the message to a communication device associated with at least one of an individual or entity, a sender of the shipment, a receiver of the shipment, a carrier of the shipment, and an individual or entity authorized to receive information regarding the shipment or the shipment conveyance device.  For example, Carrier's shipping containers ("shipment conveyance device"), fitted with Sensitech devices that utilize TripLINK telematics, send information ("message") including one or more of, but not limited to, location and temperature, to Carrier's customers. As a result, the customers monitor their shipments present in the shipping containers using a computer or mobile device. Therefore, Carrier provides a transmitter for transmitting a message to a communication device associated with an owner or an individual authorized to receive the message.

123.    As described above (*see* ¶ 52), and upon information and belief, Carrier provides a sensor, wherein the sensor monitors or measures at least one of a temperature during shipment, a shock exerted on the shipment conveyance device, an impact exerted on the shipment conveyance device, and a force exerted on the shipment conveyance device.  For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics include at least one or more of, but not limited to, a temperature sensor for measuring at least a temperature experienced by the shipping container during transportation. Therefore, Carrier's shipping containers fitted with Sensitech devices that utilize TripLINK telematics comprise sensors that monitor and measure at least one or more of, but not limited to, temperature, shock, impact and force experienced by the shipment conveyance device.

124.    As described above (*see* ¶ 53), and upon information and belief, Carrier also provides a message which contains information regarding at least one of a temperature of the shipment, a change in a

shipment temperature, and an impact or force exerted on the shipment conveyance device. For example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, monitors at least a temperature in the shipping container and transmit this temperature information ("message") to Carrier's customers. As a further example, Carrier's shipping containers, fitted with Sensitech devices that utilize TripLINK telematics, detects changes in the temperature in the shipping container and transmit an alert ("message") to Carrier's customers if the change exceeds a predetermined threshold. Therefore, Carrier provides a message which contains information regarding temperature of shipment.

125. As described above (*see* ¶ 54), and upon information and belief, Carrier further provides an apparatus wherein the event is a detection of a deviation from a pre-determined transportation route associated with the shipment. For example, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics send GPS location information and associated alerts. Therefore, on information and belief, Carrier's shipping containers equipped with Sensitech devices that utilize TripLINK telematics detect events related to deviation from a pre-determined transportation route (e.g., "geofencing").

126. As described above (*see* ¶ 90), and upon information and belief, Carrier further provides an apparatus wherein the event is a detection of a shipment temperature which deviates from a shipment temperature requirement. For example, Carrier's shipping containers equipped with Sensitech devices transmit alerts to Carrier's customers when the temperature in the container is detected beyond a threshold, and therefore, detects events including, but not limited to, deviation in shipment temperature.

127. As described above (*see* ¶ 55), and upon information and belief, Carrier further provides an apparatus wherein the shipping container, the pallet, or the piece of luggage, is a refrigerated

container, a heated container, or an insulated container.  For example, some of Carrier's shipping containers are refrigerated containers.

128.   To the extent Carrier continues, and has continued, its infringing activities noted above in an infringing manner post-notice of the '731 Patent, such infringement is necessarily willful and deliberate.

129.   On information and belief, Carrier has a policy or practice of not reviewing the patents of others. Further on information and belief, Carrier instructs its employees to not review the patents of others for clearance or to assess infringement thereof.  As such, Carrier has been willfully blind to the patent rights of Plaintiff.

130.   Each of Carrier's aforesaid activities has been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Transcend respectfully requests the Court enter judgment against Carrier:

1.     Declaring that Carrier has infringed each of the Transcend Patents;

2.     Declaring that Carrier's infringement of each of the Transcend Patents has been willful and deliberate;

3.     Awarding Transcend compensatory damages as a result of Carrier's infringement of the Transcend Patents;

4.     Awarding Transcend treble damages and pre-judgment interest under 35 U.S.C. § 284 as a result of Carrier's willful and deliberate infringement of the Transcend Patents;

5.     Granting a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Carrier from further acts of infringement with respect to the Transcend Patents;

6.     Awarding Transcend its costs, attorneys' fees, expenses, and interest;

7.     Awarding Transcend ongoing post-trial royalties; and

8.    Granting Transcend such further relief as the Court finds appropriate.


### JURY DEMAND

Transcend demands trial by jury, under Fed. R. Civ. P. 38.


Dated: June 2, 2021                              Respectfully Submitted

                                                 */s/ René A. Vazquez*
                                                 René A. Vazquez
                                                 Virginia Bar No. 41988
                                                 rvazquez@ghiplaw.com
                                                 Randall T. Garteiser
                                                 Texas Bar No. 24038912
                                                 rgarteiser@ghiplaw.com
                                                 M. Scott Fuller
                                                 Texas Bar No. 24036607
                                                 sfuller@ghiplaw.com

                                                 **GARTEISER HONEA, PLLC**
                                                 119 W. Ferguson Street
                                                 Tyler, Texas 75702
                                                 Telephone: (903) 705-7420
                                                 Facsimile: (903) 405-3999

                                                 **ATTORNEYS FOR
                                                 TRANSCEND LLC**